# Mount Union Borough, Appellant, *v.* Mount Union Water Company.

*Public Service Commission—Appeals—Review by Superior Court —Act of July 26, 1913, P. L. 1374—Act of June 3, 1915, P. L. 779.*

Under the Public Service Commission Act of July 26, 1913, P. L. 1374, as amended by the Act of June 3, 1915, P. L. 779, the Superior Court is not required on appeal to fix and determine for itself the rate, charge, etc., that a public service company may exact. The inquiry on appeal is limited to the question as to whether the order appealed from as shown by the record and certified by the commission, is reasonable and in conformity with law.

*Water companies—Rates—Boroughs—Public Service Commission.*

Where the ordinance of a borough grants to a water company a franchise to lay and maintain water pipe lines "for a period of ten years or until such time as said works may be purchased by said borough," the duration of the franchise is uncertain and indeterminate as to time.   The acceptance by a company of such an ordinance will not estop it from advancing its rates within the period of ten years if it appear such advance does not amount to more than a reasonable rate: Turtle Creek Borough v. Water Company, 243 Pa. 415; Bellevue Borough v. Water Company, 245 Pa. 114, followed.

An order of the Public Service Commission refusing to disap-

prove of rates to consumers imposed by a water company, will not be reversed by the Superior Court on appeal where it appears that a large amount of testimony was taken, much of it of an expert character, that the report of the commission showed a careful consideration of the question, and that the conclusions reached by the commission were supported by the preponderance of the evidence produced. In such a case where a complaint is made in the petition that the supply of water is inadequate, and that the water was not of the quality required by the ordinance, the commission in dismissing the complaint as to the rates may hold the petition pending the completion of tests directed to be made to determine the question of the adequacy of the water supply and pending a direction requiring the company to take the necessary steps to prevent further pollution of the water.

Argued Oct. 25, 1915. Appeal, No. 203, Oct. T., 1915, by plaintiff, from order of Public Service Commission of Commonwealth of Pennsylvania, No. 271, Complaint Docket, in case of Mount Union Borough, et al, v. Mount Union Water Company. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Complaint against the Mount Union Water Company.

The petition averred that a franchise was granted by the Borough of Mount Union to Edgar B. Kay, approved the 27th of July, 1900, permitting the said Edgar B. Kay, his heirs and assigns, to enter upon the public streets of Mount Union and supply water to the inhabitants thereof for domestic and sanitary purposes and for fire protection, and that the rates for fire hydrants for borough purposes were fixed at an annual rental of ten dollars per hydrant, for twenty hydrants. That Section 16 fixed the rates for private consumers. That all the rights granted by said ordinance became vested in the said Mt. Union Water Co. That the Mt. Union Water Company issued a schedule of rates on July 1, 1914, to be effective August 15, 1914, increasing its rates both for public fire hydrants and domestic consumption, and the petition alleges that they are contrary to the ordi-

nance permitting its entrance into the borough, and were unreasonable and excessive. That the schedule increasing these rates canceled the preceding or old rates.

By permission of the Public Service Commission, the complainant filed an amendment to the petition, as follows:

1. That the water supply furnished theretofore and at present is insufficient in amount and deficient in quality.

2. That the supply of water for fire protection has not been and is not now adequate in pressure or amount; neither does it comply with the conditions of the ordinance granting permission to enter said borough and lay pipes.

A large amount of testimony was taken and the commission in an opinion by Brecht, commissioner, made the following order:

This case being at issue upon complaint and answer on file, and having been duly submitted by the parties, and full investigation of the matters and things involved having been had, and the commission, having, on the date hereof, made and filed of record a report containing its findings of fact and the conclusions thereon, which said report is hereby referred to and made a part hereof:

Now to wit, May 20, 1915, it is ordered:

(1) That the Mount Union Water Company properly protect the stream and reservoir at Singer's Gap against pollution and contamination from surface drainage off the adjacent public highway and all other slopes, approaches and places set forth in the record of this case and report to this commission not later than July 1, 1915, the scope and character of the means employed at Singer's Gap to safeguard the purity of the water.

(2) That tests of the pressure of the water on the lines of the Mount Union Water Company, as specified in the ordinance of the Borough of Mount Union be made by the engineers of the water company and the borough, in the months of July, August, September and October,

340 MT. UNION BORO., Appel., *v.* MT. UNION WATER CO.

Assignment of Error—Opinion of the Court. [63 Pa. Superior Ct.

1915, and that the result of each test be reported to this commission within ten days after the test has been taken.

(3) That the complaint in this case be and the same is hereby dismissed, save as to matters provided for in this order.

*Error assigned* was the order of the commission.

*James S. Woods,* with him *C. E. Hower,* for appellants, cited: Peffer v. Penna. Water Co., 221 Pa. 578; Brymer v. Butler Water Co., 179 Pa. 231.

*Thos. F. Bailey,* with him *Samuel I. Spyker,* for appellee.

OPINION BY HEAD, J., July 18, 1916:

The Act of 1913 creating The Public Service Commission declares in Section 1, Article IV, that it is "an administrative body or commission for the purpose of regulating public service companies." The basic character of the newly created body is thus clearly defined. To enable such a body to execute the avowed legislative intent in creating it,—to wit, the regulation of public service companies in the State of Pennsylvania,—it was necessarily invested with powers far reaching in extent and productive of possible results of vital importance not only to those immediately affected by them but as well to the whole body of the State. The general scope of these powers is well summarized in Section 1, of Article V, of the act which again begins by declaring "The commission shall have general administrative power and authority, as provided in this act, to supervise and regulate all public service companies doing business within this Commonwealth." As many of the orders made even by such an administrative commission, in the proper execution of its powers, would necessarily have the effect of a judicial judgment or decree affecting the property rights of the citizen, any party aggrieved thereby

was allowed an appeal to the Court of Common Pleas of Dauphin County. Without attempting to advert to the sections of the act relating to the procedure in that court or to the cases in which the appeal was to be taken to the court of the particular county in which the property taken, &c., was situate, we find the legislative intent in allowing appeals generally expressed in Section 22, of Article VI. It is brief, and we quote it:—"At the hearing of the appeal the said court shall, upon the record certified to it by the commission, determine whether or not the order appealed from is reasonable and in conformity with law."

By the Act of 1915 the legislature saw fit to amend certain sections of the Act of 1913 so as, inter alia, to make the appeal allowed by the last named act to this court instead of the Court of Common Pleas of Dauphin County. Section 22, of the Act of 1913, just quoted, was neither amended nor repealed. It still measures the scope and purpose of our revisory powers, so far as conferred by this act, as it did those of the court of Dauphin County. There is nothing in the Act of 1915 to warrant the conclusion that the legislature intended to make the Superior Court a second administrative commission. The statute neither requires nor authorizes this court to fix and determine for itself the rate, charge, &c., that a public service company may exact. Our function is, as the statute declares, but to decide whether or not the appellant has discharged the burden cast on him by the legislature. Or in the words of the act our inquiry, therefore must be, was the order appealed from, as shown by the record certified to us by the commission, "reasonable and in conformity with law"?

The Mount Union Water Company is a public service company within the Commonwealth. It supplied water to private consumers in the Borough of Mount Union and to the borough itself for fire protection or other municipal purposes. It undertook to raise its schedule of rates to both classes of consumers. Thereupon the

borough filed its petition with the Public Service Commission setting forth its grounds of complaint against the proposed increase in rates and praying for an order directing the water company to furnish to its consumers a certificate of the payments made by each in excess of the rates existing prior to the proposed increase; and that after a final hearing the commission should "make such order in the premises as may seem reasonable." After an answer had been filed by the water company, public hearings were had and much testimony taken. Upon the conclusion of the hearings an order was made by the commission, and the Borough of Mount Union, feeling itself aggrieved thereby, took this appeal.

One of the chief contentions before the commission was that the ordinance of the borough, under which the water company occupied its streets, would expire in ten years from its date, and that within that period the water company was obligated, by its acceptance of the ordinance, to maintain the schedule of rates therein specified. This question was carefully considered by the commission and was determined against the appellant under the authority of Turtle Creek Borough v. Pennsylvania Water Company, 243 Pa. 415, and Bellevue Borough v. Ohio Valley Water Company, 245 Pa. 114. This conclusion was so clearly correct that upon the argument of the appeal in this court, the able counsel for the appellant formally abandoned the assignment of error complaining of the action of the commission in this respect. The provisions of the ordinance as to rates therefore presented no legal obstacle to the increase proposed.

It was next urged before the commission that if the proposed increase were to be continued it would result in rates to consumers that would be unreasonable and oppressive. The proper determination of this question necessarily involved the ascertainment of a number of facts, such as the value of the investment of the company, the length of time it had operated, the amount of gross revenue received from consumers, and the proper deduc-

tions to be made therefrom to ascertain the net revenue and its proportion to the value of the investment of the owners. Much testimony was taken—a good deal of it necessarily of an expert character—to enable the commission to determine whether or not the contention of the borough in this respect was made out. Again the report of the commission shows how carefully this question was considered and points out at least much of the testimony upon which its conclusion rested. That conclusion was that even under the proposed increase, the net revenues of the company would still fall short of the amount which the Supreme Court, in Brymer v. Butler Water Company, held such company might charge and collect without being subject to the criticism that such rates were either unreasonable or oppressive. It cannot be successfully argued here that the conclusions of fact reached by the commission were unsupported by evidence. On the contrary, a careful reading of the whole of the testimony, as presented by this record, would lead the opinion writer at least to affirm that the findings of the commission in this respect were supported by the preponderance of the evidence produced.

Two further questions are urged by the appellant as reasons why the water company should not at this time be permitted to make the proposed increase in rates. It is contended that the supply of water was inadequate in quantity and did not satisfy the obligations of the company under the ordinance; and further that it was not of the quality required by the same ordinance. There was testimony that at certain times mentioned tests were made and the pressure of water obtainable was far below that which the company had undertaken to furnish. There was also testimony that the lack of pressure at the times named was owing to causes over which the company had no control, such as the unusual and unexpected drouth of a particular season, and that the valves leading from the main reservoir had been tampered with by

some stranger to the company without its knowledge or consent. Considering all of these matters, the commission concluded the borough had failed to maintain its contention that the water supply was insufficient in quantity.

But the commission went further by its order so that it might be satisfied, from the periodical tests it required to be made, that the borough would receive an adequate supply of water. The order shows that in this respect the commission held the petition so that upon the completion of the tests it directed to be made it could finally determine. the question of the adequacy of the water supply. It was found under the evidence that proper care had not been taken by the water company in the protection of the water shed from which its reservoirs were filled. In this respect, too, a forward order was made, under the power expressly given to the commission, which order required the company to take the necessary steps to prevent any further pollution. The order made by the commission distinctly provides what is to be done by the company as to the two matters last mentioned and concludes as follows: "3.—That the complaint in this case be, and the same is hereby dismissed save as to matters provided for in this order." This action of the commission, fully authorized by the statute, as we have already said, was clearly for the benefit of the borough and its citizens, and we are unable to see how it can be made a subject of complaint or how we could rightfully interfere with it. If the tests provided for have not satisfied the commission that the company was complying with its obligation to furnish an adequate supply of water, or if the water company should neglect and refuse to carry out the provisions of the order relating to the protection of its water shed, the commission is amply authorized to make such further order as would fully protect both the borough and its citizen consumers.

After a careful review of the entire record, we are unable to say that the order made by the Public Service

Commission was either unreasonable or not in conformity with law. It should not therefore be interfered with.

Order affirmed. The costs of this appeal to be paid by the appellant.